## ELEANOR F. DRIBLE *vs.* THE VILLAGE IMPROVEMENT COMPANY.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued April 6th—decided May 12th, 1937.

*Edmond L. Morrison* and *Frank L. Wilder,* for the appellant (plaintiff).

*Raymond E. Baldwin,* for the appellee (defendant).

AVERY, J. The plaintiff brought this action to recover damages for injuries asserted to have been sustained by reason of a fall while descending a flight of steps in front of the post office at New Canaan. She alleged that on January 14th, 1935, at about 9.30 a. m., while descending the steps, she slipped upon ice thereon and fell, and was injured; and claimed that the steps were in an unsafe and slippery condition by reason of the accumulation of ice thereon and that her injuries were due to the negligence of the defendant in failing to maintain the premises in a reasonably safe condition. The case was tried to the jury and a verdict rendered in favor of the plaintiff which the court, upon motion, set aside, and the plaintiff has appealed. The only assignment of error involved in this appeal is the propriety of the court's action in setting aside the verdict.

Taking the view of the evidence most favorable to the plaintiff, the jury might reasonably have found the facts as follows: The defendant owned a building in the business center of New Canaan. The central part of the building was used as a United States post office, and on each side were stores occupied by tenants. The building sets back from the street. The open space between it and the street line was raised above the street which, at this location, ascended a slight grade. Two separate sets of concrete steps under the control of the landlord led from the street line to the space in front of the building; one set was in front of the part occupied as a post office and the other led to the space in front of one of the stores. At about 9.30 a.m. of January 14th, 1935, the plaintiff went to the post office from her home located about a block and a half away. The plaintiff approached the post office by the set of steps located in front of the store and crossed the space to the post office. She

was returning by the same route when she fell on the steps. She claimed that she was caused to fall by reason of ice thereon. On the evening of January 13th, the day before the plaintiff fell, snow had begun to fall at about 5 p. m. and continued to fall until 8 o'clock when there was an inch and a half of snow on the ground. From 6 o'clock in the evening of January 13th until 6 o'clock in the evening of January 14th, the minimum temperature was 20° and the maximum 30°. From 6 p.m. on January 12th to 6 p.m. on January 13th, the maximum temperature was 27° and the minimum 13°. From 6 p. m. on January 11th to 6 p. m. on January 12th, the maximum temperature was 32° and the minimum 21°. Except for the fall of snow on the night of January 13th, there had been no previous fall since the first of January, when one inch of snow fell, but there had been several rainstorms.

The steps were swept off by the janitor at 7 a. m. on the morning of the accident. He did not remember having seen any ice upon them at that time nor was there any evidence by any witness as to the presence of ice upon the steps previous to the time when the plaintiff fell. She stated that on going up the steps to the post office she did not observe any ice upon the steps. After she had fallen, she stated that there were cakes of ice all over the steps. Her husband who observed the steps after her fall stated that "there was snow on both sides of the steps in the corner as you are going up, and right on the top of the steps there were little cakes of ice. They were rough." A witness called by the plaintiff who saw the steps after the accident stated that at the top "it looked as if somebody had swept them off. Snow on each end. And on the first three steps there was ice and footprints as though it had melted and frozen. Just cakey. And

the three steps, there was just a little thin coating of ice."

The trial court set aside the verdict upon the ground that there was no evidence in the case from which the jury could reasonably have concluded that the ice had been upon the steps for a sufficient length of time to charge the defendant with constructive notice of a defective condition caused thereby. An accumulation of ice or snow upon a common approach may impose upon the landlord a liability for injury due to it provided he knew or, in the exercise of a reasonable supervision, ought to have known of the existence of the dangerous condition and failed to exercise reasonable care to provide against injury by reason thereof. *Reardon* v. *Shimelman,* 102 Conn. 383, 389, 128 Atl. 705; *Vinci* v. *O'Neill,* 103 Conn. 647, 657, 131 Atl. 408. To charge the property owner with liability, the notice must be "of the defect itself which occasioned the injury, and not merely conditions naturally productive of that defect and subsequently in fact producing it." *Carl* v. *New Haven,* 93 Conn. 622, 628, 107 Atl. 502; *Delaney* v. *Shimelman,* 111 Conn. 22, 26, 149 Atl. 139; *Reynolds* v. *Land Mortgage & Title Co.,* 114 Conn. 447, 455, 159 Atl. 282. Under familiar principles of law, the defendant, as a property owner, is not an insurer of the safety of persons using the common approach to the premises against the possibility of injury by reason of snow and ice thereon. The duty of the defendant was to use reasonable care to maintain the common approach to the property under its control in a reasonably safe condition under all the circumstances. Mere proof of the presence of some snow or ice or both does not necessarily show a breach of defendant's duty. In such a case as this, the burden rests upon the plaintiff, first, to offer evidence sufficiently describing the condition of the steps so

as to afford a reasonable basis in the evidence for the jury to find that a defective condition in fact existed; and, secondly, to offer evidence from which the jury could reasonably conclude that the defendant had notice of this condition and failed to take reasonable steps to remedy it after such notice.

In the present case, there is no claim of actual notice and there is no basis in the evidence from which the jury could have concluded that the condition had existed for any particular length of time. There had been no snowfall from the first of January until the evening before the accident and it would be mere speculation for the jury to have inferred that ice upon the steps had existed previous to the snowfall on the evening of the 13th. The building faced the north and the temperature was below freezing from the time when the snow fell until the time of the accident. The steps were swept off at 7 o'clock that morning and the particles of ice described as being upon the steps cannot reasonably be accounted for otherwise than as having been caused by snow trodden thereon by people walking over them in passing to and from the post office. How long these particles of ice may have been thereon is, upon this record, a mere matter of speculation. There was, consequently, no basis upon which the jury could reasonably have found that the property owner had notice of the condition and had failed to exercise reasonable care to remedy it. The court did not err in setting aside the verdict.

There is no error.

In this opinion the other judges concurred.